# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| JAMES STEPHEN CARDER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 1:21-CV-00074 |
| BILLY LAMB, *et al.*, | ) ) JUDGE CAMPBELL ) MAGISTRATE JUDGE HOLMES |
| Defendants. | ) |

## MEMORANDUM

Plaintiff James Stephen Carder, #553468, an inmate of the Hardeman County Correctional Facility in Whiteville, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Billy Lamb, Sabrina Patterson, Richard Phillips, Devon l/n/u, Manco l/n/u, Ramirez l/n/u, and Colten l/n/u, alleging violations of Plaintiff's civil and constitutional rights that occurred while Plaintiff was in the custody of the Marshall County Jail in Lewisburg, Tennessee. (Doc. No. 1).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

1

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. ALLEGED FACTS

The complaint alleges that, from September 2019 until Plaintiff's transfer to another facility, staff at the Marshall County Jail used an unspecified chemical spray "on inmates," on their mats and linens, and on inmate masks as a state-mandated COVID-19 precaution.[1] (Doc. No. 1 at

---

[1] In support of his complaint, Plaintiff submitted the grievances he filed regarding the spray. On August 19, 2020, Defendant Lamb responded to one of those grievances as follows: "The masks get sprayed and washed." (Doc. No. 1 at 12). On August 25, 2020, Defendant Lamb responded to another grievance as follows: "State Guidelines are being

2

Case 1:21-cv-00074   Document 5   Filed 12/10/21   Page 2 of 10 PageID #: 53

11, 12). Plaintiff was in the custody of the Marshall County Jail during this time. On June 15, 2020, Plaintiff first had the ability to read the label on the spray. (*Id*. at 6). The label indicated the spray's toxicity to humans and, in Plaintiff's opinion, "explained [Plaintiff's] breathing problems as well as [his] eyesight being affected." (*Id*.) Plaintiff also had developed a painful rash on his neck and back since the spraying began.

Plaintiff told Officers Ramirez, Colton, and Marco about his concerns regarding the spray. Ramirez and Marco "expressed reluctance in continued sprayed and agreed it should not be continued with this particular chemical but was told to proceed and make inmates have matts [sic] sprayed." (*Id*. at 32). The officers relayed Plaintiff's concerns about the spray to Defendant Patterson. Plaintiff also wrote numerous grievances about this issue.

Plaintiff asked on six occasions to see an eye doctor "and was told that the jail did not pay for [an] eye doctor and family would have to pay for it." (*Id*. at 6).

Each named Defendant continued to spray the offending product even after Plaintiff expressed his concerns and explained his health conditions. Plaintiff's eyesight has deteriorated since Defendants' use of the spray. Plaintiff must use glasses to see anything within four feet of him. Plaintiff since has been transferred to the Hardeman County Correctional Complex.

IV. ANALYSIS

The complaint names as Defendants the following: Billy Lamb, Marshall County Sheriff; Sabrina Patterson, Marshall County Jail Administrator; Richard Phillips, Assistant Administrator; Devon l/n/u, Corrections Officer; Marco l/n/u, Corrections Officer; Ramirez l/n/u, Corrections Officer; and Colten l/n/u, Corrections Officer. Each Defendant is sued in his or her individual and

---

followed concerning Covid 19. Spray is being investigated and waiting on answer from company chemist!" (*Id*. at 11).

official capacities. The complaint alleges that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights. (Doc. No. 1 at 3).[2]

**A. Eighth Amendment Claims**

To satisfy an Eighth Amendment claim, a prisoner must show that he is incarcerated under conditions that exposed him to a substantial risk of serious harm. *Miller v. Calhoun Cnty*, 408 F.3d 803, 821 (6th Cir. 2005). A constitutional violation only arises when the deprivation is objectively sufficiently serious. *Wilson v. Seiter*, 501 U.S. 294, 298 (2013). Only deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave enough to form the basis of an Eighth Amendment claim. *Id*. Subjectively, deliberate indifference entails conduct that "amounted to more than ordinary negligence or medical malpractice." *Atkins v. Parker*, No. 19-6243, 972 F.3d 734, 739 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). It has been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir.

---

[2] The statute of limitations for a Section 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claims arise." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The limitations period for Section 1983 actions arising in Tennessee is the one-year limitations provisions found in Tennessee Code Annotated § 28-3-104(a). *Porter v. Brown*, 289 Fed. Appx. 114, 116 (6th Cir. 2008). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Claims accrue and the statute of limitations period begins to run when the plaintiff knows or has reason "to know of the injury which is the basis of his action." *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005). This inquiry is objective, and courts look "to what event should have alerted the typical layperson to protect his or her rights." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000). It is the Court's responsibility to "determine whether the alleged precipitating event or events occurred more than a year before [the plaintiff] filed the complaint." *Standridge v. Tenn. Dep't of Children's Servs.*, No. 3:08–CV–133, 2009 WL 348782, at *7 (E.D. Tenn. Feb. 10, 2009).
    Here, Plaintiff submitted his complaint to the prison mailing system on November 11, 2021. (Doc. No. 1, Attach. 1 at 1). The complaint alleges that Plaintiff became aware of the toxicity of the chemical spray in June 2020 and attempted to persuade Defendants to cease the spraying, but the harm to Plaintiff caused by the chemical spraying continued until his transfer to another facility on November 12, 2020. For purposes of the required initial review, with the limited information before the Court at this time, it appears that at least some portion of Plaintiff's Section 1983 claims related to the spraying are timely. These matters can be more fully developed after the PLRA screening.

1992)). A prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety only if that official knows that the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to prevent it. *Wilson*, 501 U.S. 294, 298

   1. Chemical Spraying

The complaint alleges that each Defendant sprayed Plaintiff or Plaintiff's personal belongings with a toxic chemical that caused Plaintiff to develop a rash and experience a significant decline in his eyesight. This allegation satisfies the objective component of an Eighth Amendment deliberate indifference claim.[3]

The complaint alleges that Plaintiff personally notified Sheriff Lamb and Officers Ramirez, Colton, and Marco about the dangers of the chemical spray and asked the officers to notify Defendant Patterson of the same. According to the complaint, Officers Ramirez and Marco subsequently expressed their desire to discontinue the spraying, unspecified superiors told the Officers to continue, and the Officers continued using the spray even after being made aware of the risk of harm to Plaintiff. The complaint also alleges that Defendants Patterson and Lamb continued to spray Plaintiff and his belongings after having been notified of Plaintiff's health and safety concerns. The complaint does not include any allegations as to the states of mind of the other named Defendants. The Court finds that the complaint sufficiently alleges that, although

---

[3] Plaintiff's allegation that he experienced a significant, sudden decline in his vision is distinguishable from the prisoner-plaintiff's claims in *Harris v. Likens*, No. 1:20-cv-00049, 2021 WL 1213287, where the plaintiff alleged that he may need prescription eyeglasses. *Id*. at *3. There, the Court found that the plaintiff's allegations were not sufficient to establish an objectively serious medical need where "[n]owhere in the complaint or attached sick call and grievance filings does Plaintiff allege that the vision loss he suffered was dramatic or abrupt." *Id*. (citing *Wagner v. City of Saint Louis Dep't of Public Safety*, 4:12CV1901 AGF, 2014 WL 3529678, at *8 (E.D. Mo. July 16, 2014) ("Courts in this District and others have concluded as a matter of law that the denial of eyeglasses and eye medication or headaches and blurry vision resulting from an incorrect eyeglass prescription are insufficient to establish an objectively serious medical need.") (citing, *e.g., Davidson v. Scully*, 155 F. Supp. 2d 77, 88–89 (S.D.N.Y. 2001) (concluding that headaches and blurry vision resulting from an incorrect eyeglasses prescription "are not a sufficiently serious condition" to establish a violation of the Eighth Amendment)).

5

Defendants Ramirez, Colton, Marco, Lamb, and Patterson knew that Plaintiff faced a substantial risk of serious harm if they continued to use the chemical spray, these Defendants disregarded that risk, causing additional harm to Plaintiff.

Thus, for purposes of the required PLRA screening, the Court finds that the complaint states colorable Eighth Amendment deliberate indifference claims under Section 1983 against Defendants Ramirez, Colton, Marco, Lamb, and Patterson in their individual capacities based on their continued spraying of the chemical on Plaintiff and his belongings even after being made aware of the dangers of the chemical and the negative health effects Plaintiff was experiencing. As to the other named Defendants, the complaint does not allege that those Defendants acted with deliberate indifference regarding the chemical spray. Plaintiff's Eighth Amendment claims against these Defendants, therefore, will be dismissed without prejudice.

As noted above, the complaint also names all Defendants in their official capacities. When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, Defendants are employees of Marshall County, Tennessee. A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by Marshall County or its agent. *Monell Dep't of Social Svcs.*, 436 U.S. 658, 690-691 (1978). In short, for Marshall County to be liable to Plaintiff under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978)); *Regets v. City of Plymouth*, 568 F. App'x 380, 2014 WL 2596562, at *12 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)).

A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Construed liberally, the pro se complaint alleges that Marshall County had or has a policy or practice of spraying inmates' persons and their personal property (such as masks and mats) with a toxic chemical spray as a COVID-19 precaution and that this spray caused physical harm to Plaintiff. The complaint further alleges that at least some of the named Defendants who are responsible for the development and implementation of county policy knew about the risk of harm to inmates. Accordingly, the Court finds that the complaint contains sufficient allegations to state a claim for municipal liability against Marshall County. Plaintiff's Section 1983 claims against all Defendants in their official capacities, which is essentially a claim against Marshall County, Tennessee, therefore will proceed.

    2. Denial of Medical/Optical Care

Next, the complaint alleges that, while in the custody of the Marshall County Jail, Plaintiff sought medical care for his deteriorating eyesight on at least six occasions and an unspecified individual or individuals told Plaintiff that the Marshall County Jail did not provide no-cost eye doctor visits and Plaintiff's family would have to pay for any such visits.

It is a basic pleading essential that a plaintiff must attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations

7

of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Thus, the instant complaint is subject to dismissal against all named Defendants in their individual capacities because Plaintiff failed to identify the person or persons responsible for denying needed optical/medical care to Plaintiff. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). These claims will be dismissed without prejudice.

With respect to Plaintiff's official capacity claims against all Defendants, construed liberally, the pro se complaint alleges that Marshall County has a policy or practice of failing to provide free optical care to inmates. While the Eighth Amendment requires jails to provide basic medical care to inmates, there is no requirement that the jails provide the medical or dental care free of cost. *See Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir.1997) (deliberate indifference standard does not guarantee prisoners the right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses if they can afford to do so. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999) (requiring inmates to pay for their own medications if they can afford to do so is not a federal constitutional violation); *see also Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981) (no basis for due process claim where deductions from prisoner accounts were assessments for value received).).

"It is only when medical care is denied to inmates because of their inability to pay that deliberate indifference is implicated," *Miller v. Blackwelder*, 2008 WL 2940534, at *6 (E.D. Tenn.

8

July 24, 2008). Plaintiff does not allege that inmates are being deprived of medical care because they cannot pay. Neither does Plaintiff allege any denial of medical care to himself even when he or his family attempted to pay for it; thus, Plaintiff has not alleged any harm to him as a result of the county's alleged policy. *See Miller*, 2008 WL 2940534, at *6 (rejecting inmate's Eighth Amendment claim based on jail's requirement that inmate submit a co-pay every time he receives medical services); *see also Coleman v. Whitney*, 2006 WL 3791316, at *2 (E.D. La. Dec. 21, 2006) ("Programs that require inmates to bear part of their own medical costs remain within constitutional bounds so long as the program does not condition the providing of necessary medical services on an inmate's ability to pay."). Plaintiff's official capacity claims, therefore, will be dismissed.

**B. Fourteenth Amendment Claims**

In the complaint, Plaintiff states that he brings claims under the Eighth and Fourteenth Amendments. (Doc. No. 1 at 3). The complaint does not provide any detail as to the nature of Plaintiff's Fourteenth Amendment claims.

The Due Process Clause of the Fourteenth Amendment provides pre-trial detainees with rights analogous to those under the Eighth Amendment. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). However, Plaintiff does not allege that he was a pre-trial detainee at the time he was in the custody of the Marshall County Jail.[4] The complaint does not allege any violations of Plaintiff's privacy rights. *See Block v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981)). Neither does the complaint allege that any Defendant discriminated against Plaintiff because of his race, *see Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 335 (6th Cir. 1990), or violated Plaintiff's due process rights, *see Sandin v.*

---

[4] The complaint alleges that, at the time he filed his complaint, Plaintiff was a convicted and sentenced state prisoner. (Doc. No. 1 at 5).

*Conner*, 515 U.S. 472 (1995). Plaintiff does not claim the use of excessive force by any Defendant. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Although Plaintiff is proceeding pro se, the Court cannot "conjure up allegations." *McDonald*, 610 F.2d 16, 19. Plaintiff here has simply failed to articulate a colorable Fourteenth Amendment claim. Consequently, the Court finds that Plaintiff's against all named Defendants in their individual and official capacities fail to state Fourteenth Amendment claims under Section 1983 upon which relief can be granted. These claims and Defendants will be dismissed.

## V. CONCLUSION

Having screened the complaint pursuant to the PRLA, the Court finds that Plaintiff states colorable Eighth Amendment deliberate indifference claims under Section 1983 against Defendants Ramirez, Colton, Marco, Lamb, and Patterson in their individual capacities based on their continued spraying of a toxic chemical on Plaintiff and his belongings even after being made aware of the dangers of the chemical and the negative health effects Plaintiff was experiencing. Further, the Court finds that the complaint contains sufficient allegations to state a claim for municipal liability against Marshall County with respect a policy or practice of using the chemical spray on inmates and their belongings. As to the other named Defendants, the complaint does not allege that those Defendants acted with deliberate indifference regarding the chemical spray. Plaintiff's Eighth Amendment claims against these Defendants, therefore, will be dismissed without prejudice. All other claims and Defendants will be dismissed without prejudice for the reasons stated herein.

An appropriate Order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE